IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RHONDA K. LONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:09cv00131 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | By:  Michael F. Urbanski |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rhonda K. Long ("Long") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for supplemental security income benefits under the Social Security Act (the "Act"). On appeal, Long contends that the Administrative Law Judge ("ALJ") erred in finding that Long did not meet the requirements of Listing 12.05C and that she retains the ability to perform simple, unskilled work despite the severe impairments posed by her anxiety, depression, panic attacks and borderline intellectual functioning. Having reviewed the record, the undersigned finds the ALJ's decision is supported by substantial evidence and thus recommends that the Commissioner's decision be affirmed.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v.

Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or

her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Long was 35 years old at the time of the ALJ's decision in this case. In the fifth grade, Long experienced failing grades in most of her subjects and was evaluated for special education. (Administrative Record, hereinafter "R." 243.) Upon evaluation, Long was determined to be eligible for the services of a learning disabled classroom. (R. 241.) Long became pregnant and quit school in the ninth grade. (R. 48.) She obtained her GED a few years later. (R. 37.) Long completed training as a certified nursing assistant, but did not take the exam for certification. (R. 38.) Long explained that she worked at a nursing home for a few weeks after finishing the classes, but was forced to quit soon thereafter because she had a panic attack upon seeing a patient who had died. (R. 44-45.) Long also worked for three years as a furniture assembler

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 416.929(a).

3

during 1999 to 2002 and packed boards for a lumber company for a few months in 1989. (R. 181.)

Long filed an application for supplemental security income benefits on November 9, 2005, claiming an onset date of January 2, 2002. Long's application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an ALJ, and on January 25, 2008, the ALJ issued a decision finding Long retained the residual functional capacity to perform her past relevant unskilled work as a lumber packer. (R. 24.) The ALJ determined to go beyond step four of the sequential evaluation process and obtained the opinion of a Vocational Expert, who testified that Long could perform a number of light and medium unskilled jobs that exist in significant numbers in the national economy. As such, the ALJ concluded that Long is not disabled under the Act. (R. 24-25.) The Appeals Council denied Long's request for review and this appeal followed. (R. 6-9.)

### III

The administrative record contains three evaluations of Long's mental impairments performed by psychologists Brian E. Warren, Robert E. Smith and Charles Holland. Long founds her case on the psychological evaluation performed by Brian E. Warren, Ph.D., a licensed clinical psychologist, who interviewed and evaluated Long on February 12, 2007. Dr. Warren was not a treating source, rather he performed a one time consultative evaluation of Long. Dr. Warren's report addresses in detail Long's fears and panic attacks, her depressed mood and nervous and anxious demeanor. Dr. Warren summarized Long's mental status as follows:

> Overall, mental status show an extremely anxious and depressed woman with a long history of panic attacks and agoraphobia. Her anxiety and depression markedly interfere with all aspects of her daily life. She is best described with a panic disorder and collectively her problems have markedly limited her day to day functioning including severely interfering in social and

4

> interpersonal relationships, hampering her ability to concentrate
> and carry out normal tasks of living.

(R. 474.) Dr. Warren also administered certain tests to Long and concluded that "it is quite likely that she has functioned in the mentally retarded range of intelligence throughout her life. Accompanying school records, achievement testing and intellectual evaluation from her elementary school years show a diagnosis of learning disability, borderline intellectual functioning and extreme verbal comprehension difficulties that appeared to have maximized at the 5th grade level." (R. 474.) Functionally, Dr. Warren concluded that "[i]n the work setting she will have extreme difficulty coping with any stress. She cannot relate effectively with peers or supervisors. She will be unable to interact effectively with the public. Her reliability and emotional stability are poor. She cannot maintain a safe or reliable level of mental alertness." (R. 475.) In the summary form entitled Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Warren found moderate limitations in Long's ability to understand and remember short, simple instructions; marked limitations in her ability to carry out short, simple instructions and her ability to make judgments on simple work-related decisions; and extreme limitations in her ability to understand, remember and carry out detailed instructions. He founded his assessment on the following characteristics: "mental retardation, extreme anxiety, unpredictable panic disorders, depression and extremely poor concentration." (R. 476.) Dr. Warren found Long to be extremely limited in her ability to interact appropriately with the public, supervisors, and co-workers; extremely limited in her ability to respond appropriately to work pressures in a usual work setting; and moderately limited in her ability to respond appropriately to changes in a routine work setting. He supported this assessment by noting her "[p]anic disorder, no tolerance for stress, increased stress will exacerbate symptoms of anxiety. Patient is agoraphobic and socially withdrawn." (R. 477.)

5

Five months later, on July 23, 2007, Long was evaluated by Robert W. Smith, Ph.D., who summarized her background in terms of her education, employment and social/activities of daily living. Smith reported that Long attended Galax High School through the 9th grade, when she left to get married. Long said she typically received grades in the C range in special education classes and skipped school frequently. Smith noted that Long "did not have any behavioral problems in school and had good relationships with peers and teachers." (R. 479.) Long told Smith that her furniture plant job ended because of her panic attacks; that she had difficulties at work concentrating and staying awake; and that she was fearful of others, fearful of having a panic attack, and insecure. She had no relationships with coworkers and only such contact with supervisors as was necessary. As to her daily activities, Long reported to Smith the following:

> [S]he could complete self-care tasks independently, with the exception of shopping, which her mother does for her. Mrs. Long reported she does not shop due to fear of having a panic attack. She reported she lives with her two sons. She indicated she is able to drive, but is afraid to go anywhere alone. Mrs. Long reported she spends her days at home and does not socialize. She indicated on a typical day she spends time watching television, reading and sitting around the house.

(R. 479.) Dr. Smith found that Long's self-reported symptoms met the criteria for diagnoses of panic disorder with agoraphobia and depressive disorder, not otherwise specified. Dr. Smith did not perform testing needed to diagnose mental retardation, but noted that "initial screening would probably not reflect such a diagnosis." (R. 481.) In his Medical Source Statement, Dr. Smith determined that Long was moderately impaired in her ability to make judgment on simple work-related decisions and her ability to perform simple work at a consistent pace. She was found to be markedly impaired in her ability to maintain regular attendance and the ability to understand, remember and carry out detailed or complex job instructions needed for semi-skilled or skilled work. Whereas Dr. Warren found Long to be extremely limited in the work setting, Dr. Smith

6

found only moderate limitations. (R. 483.) Dr. Smith listed as the bases for his assessment her panic disorder with agoraphobia, depressive disorder not otherwise specified, panic attacks and "rule out mental retardation." (R. 483.)

The third mental health evaluation was performed by Dr. Charles Holland, who reviewed Long's medical records and was present at the administrative hearing. When questioned by Dr. Holland, Long responded that she had never sought mental health treatment as it had never been suggested to her. (R. 67.) Dr. Holland testified that the file he reviewed did not contain much in the way of educational records. Dr. Holland did review the results of an IQ test taken when Long was 10 years old and in the 5th grade, which were in the range of borderline intellectual functioning, but did not indicate mental retardation. Dr. Holland testified that there was no evidence of a detriment in adaptive functioning and that she "certainly does not present today as someone who is retarded." (R. 71, 73.) Dr. Holland agreed that Long suffered from a panic disorder and was depressed, (R. 72, 75), but that she would be able to perform simple, easy to learn, repetitive type job tasks that do not involve interaction with the public. (R. 84-85.) After the administrative hearing, Long's scholastic records were provided to Dr. Holland, and he completed a written report indicating that these records did not change his testimony. (R. 485-86.) Dr. Holland noted that Long voluntarily withdrew from school after the ninth grade, at which time she had a 5-7 grade reading level, a 4-7 grade spelling level and a 4-5 grade mathematics level. At age ten, "[t]esting indicated functioning for [Long] to be between the borderline and low average range of intelligence classification . . . . There appeared to be no significant sensory impairments, physical disabilities, behavioral/emotional disturbances." (R. 485.) Dr. Holland noted that Long's educational records indicated that at age thirteen, "she was said to have good work habits, good relationships with adults, and to be confident and

7

obedient." (R. 485.) Consequently, Dr. Holland concluded that "the claimant had significant academic problems but that she was not/is not mentally retarded. The evidence does not support a 12.05 Mental Impairment Listing." (R. 486.)

## IV

Long first argues that the Commissioner erred as a matter of law in finding that she did not meet the requirements of Listing 12.05C. This mental retardation listing provides as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1. There is no dispute that Long meets two of the requirements of Listing 12.05C because she has a valid verbal, performance, or full scale IQ of 60 through 70 and a mental impairment imposing an additional and significant work-related limitation of function. The ALJ agreed that these requirements were met. (R. 18.) The only issue presented on appeal, therefore, is whether Long proved that she had deficits in adaptive functioning initially manifested during the developmental period, as required in the introductory paragraph to Listing 12.05.

The introduction to section 12.00 Mental Disorders, 20 C.F.R. Pt. 404, Subpt. P, App. 1, states as to Listing 12.05:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment

> satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added).

The Fourth Circuit has held that the requirements outlined in the introductory paragraph of Listing 12.05 are mandatory. Luckey v. U.S. Dep't of Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989) ("In dispute are the issues of whether Luckey's low IQ manifested itself in deficits in his adaptive behavior before age 22 and whether he has a physical or mental impairment imposing additional and significant work-related limitation of function."); accord Norris v. Astrue, No. 7:07cv184, 2008 WL 4911794, at *2-3 (E.D.N.C. Nov. 14, 2008) (holding the diagnostic description of § 12.05 requires a showing of both low IQ and adaptive functioning deficits); Hatfield v. Astrue, No. 5:07cv267, 2008 WL 4449948, at *6 (S.D.W.Va. Sept. 29, 2008) ("[O]ne of the essential features of mental retardation is significant deficits in adaptive functioning."); Thomas v. Astrue, No. 1:07cv22, 2008 WL 2169015, at *14 (W.D.Va. May 23, 2008) ("[A]longside the two requirements in 12.05C, the introductory paragraph of section 12.05 creates an additional element required to meet the listing for mental retardation....").

According to the plain language of section 12.00 governing mental disorders, Long must prove that she has deficits in adaptive functioning initially manifested during the developmental period before moving on to the requirements of Listing 12.05C. See also Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition) 42 [hereinafter DSM-IV] ("Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."). "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the

standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV 42.

Substantial evidence supports the ALJ's finding that the record does not reflect significant deficits in Long's adaptive functioning manifested before age 22. Dr. Holland's report provides substantial evidence of this conclusion. To be sure, Dr. Warren's report concludes that "it is quite likely that she has functioned in the mentally retarded range of intelligence throughout her life." (R. 474.) However, there does not appear to be any objective basis for this conclusion, and it was countered by Dr. Holland's assessment. Although Dr. Smith noted that he needed to do additional testing as to mental retardation, his initial impression was that she was not mentally retarded. None of these psychologists treated Long; indeed, she has sought no mental health treatment. On this record, the ALJ was justified in concluding that Long did not establish the existence of significant deficits in adaptive functioning before age 22. Substantial evidence supports the ALJ's finding that Long has not proven she meets the requirements of Listing 12.05C.

V

Long also argues that her myriad mental impairments render her unable to perform any substantial gainful activity. The ALJ found that Long did not meet the criteria for any other listing, noting that she had only mild restriction in her activities of daily living, moderate restriction in concentration, persistence or pace and marked restriction in social functioning. (R. 17.) Dr. Holland's testimony, which was subject to cross-examination at the administrative hearing, amply supports the ALJ's decision. Dr. Holland did not find that Long had a marked limitation in her activities of daily living, noting that "she can complete self-care tasks independently with the exception of shopping. She described and appeared today as being

10

adequate hygiene, well groomed." (R. 84.) Dr. Holland agreed that Long was not markedly impaired in her ability to maintain concentration, persistence or pace based on her ability to sit down and complete various psychological tests. (R. 78-79.) Dr. Holland did believe that Long had marked difficulties in her social functioning and her interaction with the public, (R. 83), and accordingly limited her to tasks which were simple, easy to learn, repetitive and with no interaction with the public. (R. 85.)

These conclusions are consistent with the assessment of state agency psychologist Richard A. Milan, Jr., Ph.D., who performed a Mental Residual Functional Capacity Assessment and completed a Psychiatric Review Technique based on Long's medical records and her social security filings on June 8, 2006. Dr. Milan agreed that Long suffered from depression and anxiety, but found no marked limitations, registering mild limitations in activities of daily living, and moderate limitations in maintaining social functioning and concentration, persistence or pace. (R. 446.) Dr. Milan summarized mental status findings in Long's medical records, and as regards her activities of daily living noted the following:

> Reports that she does not dress up anymore. Takes sons to school. Takes care of children. Prepares sandwiches, frozen meals and at times cooks full meals. Does cleaning and laundry. Drives a car. Goes shopping once a month all day. Is able to pay bills, count change and use money orders. Watches TV. Talks on the phone every day with her mother.

(R. 448.) These findings are generally consistent with those of Dr. Smith, who evaluated and tested Long.

To be sure, the opinion of Dr. Warren goes the other way, and Long asks the court to adopt Dr. Warren's more restrictive assessment and find Long disabled. This is a classic case of a conflict in the evidence. "[I]t is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the

11

evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). Under the substantial evidence standard, it is not the job of the court to second guess the Commissioner's decision and substitute its judgment for that of the agency charged with making disability decisions. "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Rather, it is the job of the court to see whether the Commissioner's decision is supported by substantial evidence and is consistent with the law and regulations. Given the testimony of Dr. Holland and the supporting opinions of Dr. Smith and Milan, the substantial evidence standard has been met here. None of these psychologists treated Long. Indeed, Dr. Holland felt rather strongly that Long would benefit from even minimal mental health treatment and that if she obtained such treatment, "it would be expected that many of her emotional problems would be resolved." (R. 73-74, 86.) In short, Long asks the court to reject the opinion of Dr. Holland in favor of that of Dr. Warren. To do so would run afoul of the substantial evidence standard and require the court to substitute its judgment for that of the Commissioner, which the court cannot do.

## VI

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence and, in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, the court does not suggest that Long is without certain functional limitations. However, these limitations were noted by the ALJ in the RFC and accounted for by the Vocational Expert in his testimony

finding that substantial numbers of jobs existed in the national economy that Long could perform. The objective medical evidence in the administrative record simply fails to document the existence of any impairment which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the evidence in adjudicating Long's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be affirmed and the defendant's motion for summary judgment be **GRANTED**.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

                                                    Entered: July 1, 2010.

                                                    /s/ Michael F. Urbanski

                                                  Michael F. Urbanski
                                                  United States Magistrate Judge